[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
On July 3, 1989, the plaintiff, as supplier, entered into a contract with the defendant Bridgeport Paving Company, Inc., to furnish 20,000 plus cubic yards of fill at $7.00 per yard delivered at jobsite in connection with extensive regrading of the land owned by the Pomperaug Regional School District. Despite the School District being the named party defendant, it is no longer involved in these proceedings as its motion to strike the portions of the complaint addressed to it was granted over a year ago. Westchester Fire Insurance Company is an additional defendant as it is surety on a payment bond issued to Bridgeport Paving. The parties are at issue on two major points: the quantity of fill delivered and whether that fill should be measured in its loose form as it would be on trucks or in its compacted form as it would be after installation.
The evidence as to quantity is widely disparate. Delivery tickets were presented indicating delivery of some 34,227 cubic yards of loose fill. The authenticity of many of those tickets amounting to approximately 9,100 cubic yards is disputed. Some of the tickets are unsigned, some were definitely not signed by the person whose signature they purport to be, and as to another group, it is in doubt whether or not the signature is authentic. In addition, there was testimony indicating that in many instances the trucks making the deliveries were short loaded so that the quantity of fill was overstated. To further complicate the situation, Bridgeport Paving did borrow fill from one part of the job site and moved it to the area where Cierra Trucking was dumping fill and also it obtained some amount of fill for the work from a third party.
I am not impressed by the claim of forgeries. It would not be unusual for some worker at the site to sign someone else's name if for any reason it was not convenient to have the proper person do the signing. I am also not impressed by the fact that some of the tickets are unsigned. I am impressed by the claim as to short loading; I am not so naive as to believe such a practice is not the name of the game. As indicated later in this memorandum, I am CT Page 3094 impressed by the claim that some 2,880 cubic yards of compacted fill was transferred by Bridgeport Paving from other parts of the site. I have no reason to doubt that some quantity of the fill was obtained from a third party but I have no confidence that the amount involved was between 4,000 and 5,000 cubic yards as estimated by employees of Bridgeport Paving.
Bridgeport Paving admits that 15,090 cubic yards were delivered by the plaintiff. In a requisition to the School District dated October 13, 1989, Bridgeport Paving represented that 25,000 cubic yards were involved. Their own expert, a surveyor and engineer, whose testimony I find credible, computed that 23,470 yards of compacted fill was used, of which 2,880 cubic yards were borrowed from other parts of the site. His computation of the amount borrowed was based on the quantity as it had been in the borrow area and therefore it was compacted. Subtracting that borrow volume from the volume of the completed job leaves 20,590 compacted cubic yards from the plaintiff and the third party. Using a compaction factor of .2 means that approximately 25,740 cubic yards were trucked in as loose fill. The estimate as to the quantity obtained from a third party was necessarily based on loose fill on a truck for the employees would have no other means of measuring it. As above noted, I have no confidence in the accuracy of that estimate. No evidence was presented as to the number of truck loads or of the capacity of the trucks. Furthermore, in a requisition to the School District dated July 28, 1989, Bridgeport Paving represented that 22,500 cubic yards were in place even before any fill was obtained from the third party so after the third party came into the picture, only 2,500 yards of compacted fill remained to be supplied, so only 2,813 cubic yards of loose fill was involved between the end of July and the middle of October. Paying attention only to the delivery slips as to which the signatures are not in dispute indicates that the plaintiff delivered at least 10,000 yards of loose fill after July 28. As I give credence to the claim of short loading, this amount should be reduced by some factor but I find it incredible that the factor should be less than .8 so at least 8,000 cubic yards were delivered in that time frame. It would be reasonable to conclude that the 22,500 cubic yard figure in the requisition resulted from a substantial amount of puffing. As I accept that some significant amount of fill was obtained from the third party and as I regard the 4,000 to 5,000 yard figure as a gross exaggeration, I conclude that a more reasonable estimate approximates 3,500 yards of loose fill or 2,800 yards of compacted. Subtracting the 2,880 cubic yards obtained from other parts of the site and the 2,800 cubic yards obtained from the third party from the 23,470 cubic yard figure computed by the engineer, gives a net compacted cubic yardage of 17,790 that must have been supplied by the plaintiff. This equates to approximately 22,300 yards of loose fill. CT Page 3095
The next problem is whether payment should be based upon compacted fill or loose fill. The contract is inconsistent on this point. At one point it states that the price to be paid shall be "$7.00/CY Del Jobsite". The natural meaning of this is that the price shall be computed on the basis of loose fill. In a rider to the contract, it is stated that the plaintiff is to "Supply Deliver to Jobsite some 20,000 + cubic yards borrow material per Conn DOT Standard M.02.07". The referenced standard makes clear that the Department of Transportation would make payment on the basis of compacted fill. The contract and the rider were prepared by Bridgeport Paving, and it is Hornbook Law that in the event there is an inconsistency in a contract, that inconsistency is to be resolved against the author. Therefore I conclude that the computation is to be based upon loose fill. That works out to $156,100 of which $77,434 has already been paid leaving a balance due of $78,666.
Westchester Fire Insurance Company raises as a defense an allegation of improper notice. It is undisputed that the plaintiff ceased to furnish materials on September 21, 1989 and that the plaintiff's attorney wrote a letter to Westchester on November 29, 1989 which is well within the 90 day period specified in Connecticut General Statutes Section 49-42. The letter, however, was sent by regular mail and not by registered or certified mail as required by statute. However, the bond itself contains a notice provision that states that a claimant "shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant. . . furnished the last of the materials for which said claim is made." It then goes on, as does the statute to state alternative methods of giving notice, either by registered or certified mail "or served in any manner in which legal process may be served." The sheriff's return demonstrates service of the complaint, which certainly is notice of a claim, upon the owner, the School District, and the principal, Bridgeport Trucking, on November 15, 1989, so the notice requirements set forth in the payment bond have been met. By specifying in the bond how notice was to be given, Westchester either waived strict conformance with the statute or invited error on the part of the plaintiff and in either event should not be allowed to complain when the plaintiff did what Westchester told it to do.
As I conclude that the notices served on November 15, 1989 were proper, interest on the unpaid balance at the statutory rate of 10% per annum claimed in the claim for relief in the amended complaint is allowed from the date of service to the date of payment.
The plaintiff also asks for attorney's fees. Such an CT Page 3096 allowance is provided for in the statute "if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law." Even the most cursory reading of this memorandum demonstrates that the defenses did have substantial basis in fact. This is fortified by the plaintiff's claim that $142,000 was due and Bridgeport Paving's admission that there was a balance of $24,367. The claim for attorney's fees is denied.
Judgment may enter for the plaintiff against the defendants, Bridgeport Paving and Westchester Fire Insurance Company in the principal amount of $78,666 together with interest at 10% per annum from November 15, 1989, costs to be taxed.
J. HEALEY, STATE TRIAL REFEREE